UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL CEDRIC GUESS, | No. C 09-2117 PJH (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY** |
| vs. | |
| M. EVANS, Warden, | |
| Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

On December 1, 2005, a jury found petitioner guilty of attempted pimping, *see* Cal. Penal Code §§ 266h(b)(2), 664, and aiding and abetting a lewd act without force or duress, *see* Cal. Penal Code §§ 31, 288. In a hearing outside the presence of the jury, petitioner admitted having served a prior prison term. Respondent's Exhibit ("Resp. Exh.") G1 at 70-73. On December 29, 2005, the court sentenced petitioner to a total term of nine years in prison, consisting of the upper term of 8 years for aiding and abetting a lewd act, enhanced by one year due to his prison prior, and stayed a mid-term sentence for attempted pimping. Resp. Exh. A at 2; G5 at 461-64. On December 21, 2007, the California Court of Appeal affirmed the judgment in a reasoned decision, and on September 16, 2008, the California Supreme Court dismissed a petition for review. A petition for writ of certiorari was denied

by the United States Supreme Court. Petitioner did not seek further review in the state courts.

The California Court of Appeal summarized the facts of the offenses as follows:

> On Friday, March 18, 2005, San Jose Police Officers Mario Brasil and Rick Galea conducted undercover surveillance in the parking lot of a San Jose shopping center known for prostitution. Automobiles were circling in the lot and some female pedestrians were having brief conversations with the occupants. About 10:00 p.m., the officers followed one of these females in their car. The female got into the right rear seat of defendant's car, which was parked in the lot. Also inside the car were defendant in the driver's seat, Emily in the front passenger's seat, and Drayshonda sitting behind defendant. In 45 minutes of surveillance the officers had not seen Emily or Drayshonda outside of the car, but for some of that time they watched and cited another female for prostitution. The officers got out of their car and spoke with the three girls, both separately and together.
> Defendant was wearing a white hat, white pants, a black sweatshirt, and he had a yellow ring on a yellow chain. He had a wallet but no cash. None of the girls had cash either.
> A search of defendant's car revealed over 50 pieces of paper listing "Lil Daddy" and a telephone number in the glove compartment, a cell phone with "Lil Daddy" on the screen, and a baggie containing a rock of .23 grams of cocaine under the driver's seat. A blood test of defendant was negative for any drugs.
> Defendant was arrested and transported to the police station. Officer Brasil interviewed him after defendant waived his rights. Defendant stated the following. He had driven down from Oakland and was waiting for his aunt when the girls came to his car. When asked if he was pimping the girls, he said he is or was a coke dealer. He has a 14–year–old daughter, so he would not pimp a girl that age. The name tags were for handing to girls, though he is married. Defendant denied that the cocaine was his. He had retired from that life. He does not use drugs.
> Emily refused to testify at trial, even under a grant of use immunity.
>
> ***Drayshonda's First Interview***
>
> Drayshonda was a runaway from her mother and from juvenile hall in Sacramento. She had cut off an ankle bracelet for electronic monitoring.
> On March 18, 2005, Officer Brasil spoke with Drayshonda in his car and recorded part of their conversation. The recording was in evidence at trial. He told her she would not get in trouble if she cooperated.
> Drayshonda initially gave Brasil a false name, birth date, and high school. She also called Emily "Chloe." Officer Brasil did not believe she was as old as 17, as she claimed.
> Drayshonda told Officer Brasil the following. She was out "ho'ing" (whoring). It was her second day. Emily had gotten her started. She was working with defendant, whom she knew as "Mike." She did not consider him her pimp. The prior night, Thursday, she had given him $50, although he did not ask for anything. Thursday they were out until midnight. She made $60. She initially said she had one date that night. She first said it was $40 for oral sex, then said it was sex when Officer Brasil questioned her. She made another $20 by showing her breasts to another man. She spent Thursday night at defendant's place in Oakland. They slept in

United States District Court
For the Northern District of California

different rooms and did not have sex. She had not made any money on Friday night.

### *Drayshonda's Second Interview*

On April 1, 2005, Drayshonda was interviewed for over an hour in an interview room at the Sacramento Juvenile Hall by Elliott Beard, a law enforcement officer. It was against the hall policy for Officer Beard to bring in a tape recorder, so he took notes. Drayshonda was quiet and shy and did not maintain eye contact with Officer Beard. She told him the following.

She left Sacramento because she had removed an ankle monitor. A friend took her to Oakland. While she was walking on the street, a car drove up containing Emily and Mike. Drayshonda knew Emily from Sacramento. She got into the car. Defendant said "let's go make some money." He asked Drayshonda to call him "Lil Daddy." He took them out and bought them some clothes. She got a short skirt and a tight shirt.

Defendant drove Emily and Drayshonda to San Jose. Emily left the car and came back later with $200 that she said was for having sex with men.

Drayshonda cried because she did not want to get out of the car and do the same thing. She thought defendant would hit her. She did get out of the car and have sex with one man for $40. She returned to defendant's car and gave him the money. She kissed his ring as he requested. When Emily returned to the car, they went to get something to eat and returned to Oakland. Emily gave defendant another $60.

In Oakland, they stayed at defendant's house. In his house were other girls, who were selling drugs and "ho'ing."

Officer Beard was initially confused about whether Drayshonda was describing one night or two. She said that they engaged in the same activity in San Jose the second night. Defendant gave her four condoms and told her to charge $80 for sex and $60 for "sucking ... dick." Drayshonda tried unsuccessfully to get a "date." She went back to the car that night when she saw the police. Emily and defendant were in the car. Another prostitute came up to the car.

At one point defendant yelled at Emily and raised his hand as if to strike her. He did not strike Emily or Drayshonda Officer Beard believed that this occurred on the second night.

Drayshonda told Officer Beard that a man paid her $20 to look at her breasts. He did not include this statement in his report.

### *Drayshonda's Preliminary Examination*

The following parts of Drayshonda's preliminary examination testimony were read to the jury.

Drayshonda turned 13 in January 2005. Her home is in Sacramento. She was in juvenile hall because she ran away from home.

On Thursday, March 17, 2005, she came to Oakland with a friend. As she was walking down a street, a car drove by and hailed her. Inside were Emily and defendant, who introduced himself as "Mike" or "Lil Daddy." Drayshonda knew Emily from Sacramento as a prostitute.

Drayshonda got into the car to talk with Emily and because she had nowhere else to go. She had no money. Defendant offered them some food and drove them to a San Jose shopping center, where he bought them clothes. He did not tell her what clothes to get. Emily told her to get some heels, a skirt, and a t-shirt. He took them to "Auntie's" house where they

3

changed. He brought them back to the shopping center in the early evening.

At the shopping center, Emily got out of defendant's car at his suggestion. After a while she came back with some money. Drayshonda could not recall the amount. Defendant was wearing a ring. He told Emily to "get [her] lips wet." She kissed the ring and handed defendant the money. He said "you all go on...."

Emily and Drayshonda got out of his car. Defendant spoke to her on Emily's cell phone. He told her to ask people driving by if they wanted "panucha," which Emily said meant "vagina." Drayshonda went back to defendant's car. He said, "there's a whole bunch of tricks out there, go out there." Drayshonda did not know what "tricks" meant. She was afraid he might hit her, so she did. He did not hit her or Emily, but earlier that day he had yelled at Emily and raised his hand to her.

Drayshonda had never done anything like this before. She stood by a telephone booth as defendant had instructed. Emily hailed a car and directed it to Drayshonda. The driver asked her for "panucha." On Emily's cell phone, defendant told her, "you better get him." Drayshonda got into the car and had intercourse with the man for $80. She used a condom that Emily had given her.

Drayshonda brought the money back to defendant in his car. At his request, she kissed his ring and gave him the money. Drayshonda at first said that she tried to get more money that night as defendant told her, but she failed. Men approached her, but she said she was not a prostitute.

Drayshonda later recalled she had made another $20 the first night, for exposing her breasts to a man. She first asked him, as instructed by defendant, if he was the police. She gave defendant that money and kissed his ring again. After that, she told other men she was not a prostitute.

When Emily returned, they went to get some food, because Drayshonda said she was hungry. They drove through a Jack–in–the–Box. Defendant told them to get out because there were a lot of tricks around. After eating, they went to defendant's house in Oakland and spent the night. Other females were in the house.

The next day Drayshonda slept until the evening. When she woke up, defendant told her to get dressed. He drove her and Emily back to the same San Jose shopping center. On the way they bought Drayshonda more heels because she was wearing tennis shoes. At one point Emily opened the glove box and a paper fell out with "Lil Daddy" and telephone number listed. There were similar papers in the car.

Drayshonda went back near the telephone booth. When men approached her, she told them she was not working, she was not a prostitute. She did not make any money the second night. Emily made money and gave it to defendant one time. Drayshonda could not tell how much.

An older girl came and got into the car and warned them the police were coming. Defendant told Emily to hide her head. Emily said something about dope and told Drayshonda to hold something. Drayshonda told her she better hide it. She did not see what Emily did with the object.

The police talked to all the girls the second night. Drayshonda initially lied about her name as defendant had instructed her. She eventually gave them her true name. She told them that defendant was not her pimp. She understood it was someone who make people prostitutes. The police took her to a juvenile center.

Resp. Exh. A at 2-7.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that: (1) the trial court violated his Sixth Amendment rights when it denied his request for a continuance of the preliminary hearing; (2) the trial court violated his Confrontation Clause rights by admitting evidence of the victim's pretrial statements, including her preliminary hearing testimony and statements from two police interviews, and (i) as a subissue, that trial counsel was ineffective for failing to preserve his objection to the admission of the victim's statements from the two police interviews; and (3) the trial court violated his Sixth and Fourteenth Amendment rights when it sentenced him to the upper term based on factors that were neither admitted by him nor found true by a jury .

**I.      Denial of the Motion for Continuance**

Petitioner contends that the trial court's denial of his motion for continuance of the preliminary hearing, deprived him of his Sixth Amendment right to the effective assistance of counsel because he could not adequately prepare to cross-examine the victim, Drayshonda, during his only opportunity to do so.

The Court of Appeal summarized the facts surrounding the motion to continue the preliminary hearing as follows:

> A complaint filed [on] March 23, 2005, charged defendant with two counts of pimping prostitutes under the age of 16, Emily (count 1) and Drayshonda (count 2), and with possessing cocaine (count 3).
> The preliminary examination was scheduled for Thursday, April 7, 2005. On that date, defendant filed a motion to continue the preliminary examination. Defense counsel declared that he had just, in the late afternoon on Tuesday, April 5, 2005, received tapes of police interviews of three victims. The tapes were hard to understand. The speakers were not identified. Sometimes two victims spoke at once. He did not have names or contact information for any victim. He would like the time to prepare a transcript, to identify the speakers, to review the police reports, and to interview the victims.
> At the outset of the preliminary hearing, defense counsel orally

announced that he was not ready to proceed. The prosecutor objected to the continuance request, asserting the following. Though 13–year–old Drayshonda was in custody in Sacramento, she was present because the prosecutor had spoken to at least eight people in Sacramento and Santa Clara Counties to arrange for her transportation. Drayshonda's mother had come from Sacramento to be a support person. It was a case where time was not waived. Drayshonda would like to return to Sacramento and take care of matters pending there.

    Defendant acknowledged it had been his request to proceed without waiving time. He said the matter still came up fairly quickly. Defendant said that he was now willing to waive time to allow counsel to prepare.

    The prosecutor responded that the tapes were short and were accurately described in the police reports. The prosecutor believed that defendant was willing to waive time and "pick a date in the future when I can't find his witnesses...." The prosecutor was going to be out of the office the next two business days.

    The court stated: "As you can see[,] I'm not pleased [defense counsel]. I can read between the lines as to the time not waived and now there is a request for continuance when the victim was found at—because the DA made great efforts to locate her. [¶] And I was going to continue it to the tenth day but that is Monday and as I count it, you're not available on Monday." The prosecutor confirmed his unavailability. The court said, "I was going to suggest Tuesday, find good cause."

    The prosecutor argued as follows. It was a probable cause hearing and defense counsel could do an adequate job. "I will do a thorough job since this may be the only time I have to interview this witness." It would only take 90 minutes to examine the witness "sufficient for a probable cause hearing at a level that will preserve the defendant's constitutional rights." It would burden the families to have her stay over. It was not impossible. She would like to return to Sacramento the following day. She is in juvenile hall there and was a runaway to San Jose. If nothing else, the court could put the witness on and see if the issue arose later.

    The court ruled, "I am going to deny the motion. It is a preliminary examination."

    At one point during the preliminary examination, Drayshonda testified to an uncharged crime, that defendant had sex with her when they stayed overnight at his house. Defense counsel objected and renewed his request for a continuance. Drayshonda acknowledged that she had not told this to Officer Brasil, but said she did tell another man who came to Sacramento. Defense counsel objected that this was news to him and was why he wanted a continuance. It was not in the police reports or on the tapes as he understood them.

    The prosecutor responded that preliminary examinations were not for discovery purposes. It is common for new information to emerge in sexual assault cases.

    The court overruled the objection.

    Before cross-examining Drayshonda, defendant renewed his request for a continuance. The court again denied the request. During the cross-examination of Drayshonda, the prosecutor objected to only two questions, both for relevance, first if she knew she was being tape-recorded and second if she had engaged in similar activity before. The court sustained the first objection and overruled the second one.

    At the end of the hearing, defense counsel renewed his objection and the court denied it, saying the only surprise information was the

7

sexual act in Oakland.

Resp. Exh. A at 7-9.

On direct appeal petitioner argued that his counsel was not prepared to cross-examine Drayshonda at the preliminary hearing because he did not have enough time to listen to her taped interview and compare it to the police reports. Resp. Exh. A at 7-8. The California Court of Appeal rejected this argument, finding that there was no authority for importing trial rights into a preliminary hearing. *Id.* at 11. The Court of Appeal observed that a "defense attorney is not disabled from meaningful cross-examination at a preliminary hearing because he or she does not have all known information about a witness." *Id.* at 11. The court found that defense counsel had an opportunity to conduct a meaningful cross-examination of Drayshonda, and could have asked more about her conversations with police officers, because the prosecutor did not object to the scope of the cross-examination. *Id.* at 11. After considering all the circumstances, the Court of Appeal concluded that the trial court did not abuse its discretion when it denied petitioner's motion to continue the preliminary hearing. *Id.*

Trial judges are afforded "broad discretion ... on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" violates the right to the assistance of counsel. *See Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) *quoting Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). In addition, the improper denial of a requested continuance warrants habeas relief only if there is a showing of actual prejudice to petitioner's defense resulting from the trial court's refusal to grant a continuance. *See Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997).

Petitioner reiterates the same basic argument in this petition, claiming that it was impossible for counsel to provide effective representation without having contact information for the witness, and without having time to prepare a transcript of the tapes to compare against police reports and obtain possible impeachment evidence. This claim lacks merit. Petitioner fails to explain how having contact information for Drayshonda would have helped him to cross-examine her at the preliminary hearing. Moreover,

petitioner provides no examples of inconsistencies in Drayshonda's testimony that he could have identified if he had a transcript of the preliminary hearing. The trial court's decision to deny the motion for continuance was far from "unreasoning and arbitrary," *see Morris*, 461 U.S. at 11, as the record reflects that the court listened to argument from both sides before making a well-reasoned and logical decision to deny the motion. Resp. Exh. I at 3-12.

Moreover, petitioner's vague assertion that there was a reasonable probability that he would have obtained a more favorable result had his motion been granted, is insufficient to demonstrate actual prejudice. To demonstrate actual prejudice, petitioner must show that the verdict would have been different had the court granted his request for a continuance. *See United States v. Wilkes*, 662 F.3d 524, 543 (9th Cir. 2011). Defense counsel conducted a vigorous and thorough cross-examination at the preliminary hearing that was not limited by the court and was not rendered less effective by the lack of a transcript. Resp. Exh. I at 53-88. In addition to many questions about the sequence of events and details of incidents during the time she was with petitioner, counsel asked Drayshonda what she told officers when they questioned her at the scene, and focused on the false answers she gave police regarding her name and age. Resp. Exh. I at 71-74, 81-84. Petitioner fails to show that having more time to prepare would have enabled him to develop facts sufficient to challenge the court's probable cause determination, let alone that would have led to a more favorable outcome at trial. Habeas relief is not warranted without a showing of actual prejudice to petitioner's defense resulting from the trial court's refusal to grant a continuance. *See Gallego*, 124 F.3d at 1072.

Under these circumstances, the state court's decision denying relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d); *see also Morris*, 461 U.S. at 11.

## II. Confrontation Clause

In his second claim, Petitioner contends that the trial court's admission of Drayshonda's preliminary hearing testimony and pretrial statements from two police interviews, violated his Sixth Amendment right to confrontation. Petitioner also contends

that counsel was ineffective for failing to preserve his objection to the admission of Drayshonda's pretrial statements from the police interviews.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403 (1965). The "main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" *See Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (emphasis in original; citation omitted). The Confrontation Clause applies to all out-of-court testimonial statements offered for the truth of the matter asserted, that is, "testimonial hearsay." *See Crawford v. Washington*, 541 U.S. 36, 51 (2004). "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.*, 541 U.S. at 59. "Where testimonial evidence is at issue...the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination....[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

Before the trial, the court heard argument on the prosecution's motion to admit Drayshonda's preliminary hearing testimony into evidence based on her unavailability as a trial witness. Resp. Exh. G1 at 5-45. Defense counsel conceded that Drayshonda was unavailable to testify at trial because she cut off her electronic monitoring bracelet and absconded. *Id.* at 6-7. Nevertheless, petitioner opposed the prosecutor's motion, arguing that he did not have a meaningful opportunity to confront and cross-examine Drayshonda at the preliminary hearing because there were questions he would ask at trial that he would not be entitled to ask at a preliminary hearing. *Id.* at 24. Because there was no dispute regarding Drayshonda's unavailability, the only question left for the trial court to resolve was whether petitioner had an opportunity to cross-examine Drayshonda at the preliminary hearing. Petitioner argued that his opportunity to cross-examine was inadequate because

his hands were tied by the nature of the preliminary hearing, which prohibited it being used for discovery. *Id.* at 21-22. The court nevertheless found that *Crawford's* requirements of unavailability and a prior opportunity to cross-examine had been satisfied, and admitted into evidence the portion of Drayshonda's preliminary hearing testimony pertaining to the charged offense.[1] *Id.* at 48-52. Following this ruling, the parties agreed that Drayshonda's statements from her two police interviews could come in for impeachment purposes. Resp. Exh. A at 12-13.

The court will examine the preliminary hearing testimony and the statements from the two police interviews separately as they involve different issues, and will then turn to a discussion of whether counsel was ineffective for failing to preserve his objection to the admission of Drayshonda's statements to law enforcement.

**a. Preliminary Hearing Testimony**

On direct appeal, petitioner claimed that admission of Drayshonda's statements from the preliminary hearing violated *Crawford* because counsel's late receipt of the taped statements precluded him from being able to fully prepare for a thorough cross-examination of Drayshonda. Resp. Exh. A at 13. The California Court of Appeal began from the proposition that, under *Crawford,* a witness had to be unavailable and there must have been a prior opportunity to cross-examine that witness before the witness' statement could become admissible. *Id.* at 13-14. The court further noted that, so long as the defendant had the prior opportunity for cross-examination, California law did not require the prior opportunity for cross-examination to have been effectively exercised. *Id.* at 14. "[T]he admission of preliminary hearing testimony under Evidence Code § 1291 does not offend the confrontation clause of the federal constitution simply because the defendant did not conduct a particular form of cross-examination that in hindsight might have been more effective." *Id.* The Court of Appeal thus concluded that the testimony was admissible because petitioner had an adequate opportunity to cross-examine Drayshonda at the

---

[1] The court excluded Drayshonda's surprise testimony about defendant having sex with her.

11

preliminary hearing. *Id.*

In this petition, Petitioner again argues that the admission of Drayshonda's preliminary hearing testimony violated *Crawford* because he did not have a meaningful opportunity for cross-examination. Specifically, petitioner contends that his right of confrontation was violated because the right to cross-examine a witness at a preliminary hearing is not coextensive with the right to do so at trial. Rather than point to any limitations that actually were placed on his cross-examination of Drayshonda at the preliminary hearing, petitioner instead suggests that there were a number of questions he would have posed for discovery purposes, but chose not to ask, because they would have drawn an objection as being beyond the scope of the preliminary hearing. The United States Supreme Court has made it clear that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *See Van Arsdall*, 475 U.S. at 679 (citation omitted). Where a defendant represented by counsel has the opportunity to cross-examine a witness at a preliminary hearing in circumstances closely approximating those that surround the typical trial, that witness' preliminary hearing statements are admissible at trial if the witness is unavailable. *See California v. Green*, 399 U.S. 149, 165 (1970). As discussed in Section II, *supra*, the record reflects that petitioner was given an opportunity to cross-examine Drayshonda at the preliminary hearing, on the record and under oath, and there is no indication that the trial court prevented counsel from exploring any relevant topic. The California Court of Appeal's decision denying petitioner's Confrontation Clause claim, is not contrary to, or an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d); *see also Crawford,* 541 U.S. at 54.

**b. Police Interviews**

Petitioner also contends that the admission of statements made by Drayshonda to police officers in two separate interviews violated his right to confrontation.

Following the court's pretrial ruling admitting Drayshonda's preliminary hearing testimony, the parties agreed that her statements from both police interviews could come in

12

for impeachment purposes. Resp. Exh. A at 12-13. Due to petitioner's failure at trial to separately object to the admission of Drayshonda's statements, the Court of Appeal concluded that his argument was waived on appeal, and did not address the merits of petitioner's claim that admission of the statements violated his right to confrontation. Resp. Exh. A at 15.

"Federal habeas review of a claim is barred in all cases where a state prisoner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule." *See Vansickel v. White*, 166 F.3d 953, 957 (9th Cir. 1999). The adequate and independent state ground doctrine provides that federal courts "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both independent of the merits of the federal claim and has an adequate basis for the court's decision." *See Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (citation omitted). California's "contemporaneous objection rule," which requires objection at the time of trial to preserve an issue for appeal, is an adequate procedural bar. *See Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002). Because the California court found that petitioner's claim was procedurally barred under state law, he must demonstrate cause and prejudice to obtain habeas relief under federal law. *See Vansickel*, 166 F.3d at 957-58 *.*

Following the court's pretrial ruling admitting Drayshonda's preliminary hearing testimony*,* petitioner, as a tactical matter, stipulated to the admission of her statements to police officers. However, by doing so, petitioner failed to preserve the issue for appeal. *See Melendez*, 288 F.3d at 1125*.* The Court of Appeal correctly applied California's contemporaneous objection rule to find that petitioner waived this argument on appeal. Petitioner's claim that the admission of Drayshonda's statements to police violated his right to confrontation is therefore procedurally defaulted unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. *See Vansickel*, 166 F.3d at 958.

**(i) Ineffective Assistance of Counsel**

13

Petitioner argues that he can show cause and prejudice to overcome his procedural default because counsel was ineffective for failing to preserve his objection to the admission of Drayshonda's statements to police officers. Ineffective assistance of counsel is cause for procedural default. *See Vansickel*, 166 F.3d at 958.

In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires him to show deficient performance and prejudice. Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish prejudice, petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. If a petitioner cannot establish that defense counsel's performance was deficient, it is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

The California Court of Appeal determined that counsel had a tactical reason for agreeing to the admission of Drayshonda's statements from her police interviews. Resp. Exh. A at 15. Specifically, the court observed that counsel was able to make use of several inconsistent statements from the police interviews to effectively argue to the jury that Drayshonda was not a credible witness. *Id.*. The Court of Appeal concluded that counsel's argument was effective given that petitioner was convicted of lesser included offenses on two charges and acquitted on the remaining two charges. *Id.* Having found that counsel's performance was not deficient, the Court of Appeal declined to address the prejudice prong. *Id.*

Petitioner acknowledges that counsel's strategic decision not to object to the admission of the statements allowed him to impeach Drayshonda's preliminary hearing testimony, but argues that it would not have been necessary to impeach her testimony had the court properly excluded it in the first instance. Petitioner also concedes that counsel

14

may have done a good job under the circumstances, but those circumstances were compounded by the trial court's initial error in admitting Drayshonda's preliminary hearing testimony. Petitioner's argument is based not on counsel's ineffectiveness, but rather on what he describes as the trial court's erroneous admission of the preliminary hearing testimony. Counsel's strategy agreeing to the admission of Drayshonda's statements was employed in response to the trial court's adverse ruling admitting her preliminary hearing testimony. Stipulating to the admission of her statements to police enabled counsel to point out the inconsistencies in Drayshonda's testimony without allowing the prosecution an opportunity to resolve them. Petitioner fails to demonstrate that counsel's failure to object to the admission of Drayshonda's statements to police officers constituted deficient performance rather than reasonable trial strategy. Because petitioner cannot establish that defense counsel's performance was deficient, it is not necessary for this court to address the prejudice prong of the *Strickland* test. *See Siripongs,* 133 F.3d at 737. Based on the foregoing analysis, the court concludes that there is no cause to excuse petitioner's procedural default of this claim.

Accordingly, the state court's conclusion that petitioner waived this argument on appeal was not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d); *see also Strickland*, 466 U.S. at 687.

### III. Imposition of the Upper-Term Sentence

Petitioner's final claim is that the upper term sentence imposed on his conviction for aiding and abetting a lewd act violated his Sixth Amendment right to a jury trial because it was based on aggravating factors found by a judge and not proven to a jury beyond a reasonable doubt.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In *Blakely v. Washington*, 542 U.S. 296, 303 (2004), the Supreme Court explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on*

*the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* (emphasis in original). Therefore "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." *See Cunningham v. California*, 549 U.S. 270, 288-89 (2007). In *Cunningham*, the Supreme Court, citing *Apprendi* and *Blakely*, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent that it contravenes "*Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *See id. quoting Apprendi*, 530 U.S. at 490.

     Under California law, only one valid aggravating factor is necessary to set the upper term as the maximum sentence. *See Butler v. Curry,* 528 F.3d 624, 643 (9th Cir. 2008). At the sentencing hearing, however, the trial court relied on four aggravating factors, none of which were found by the jury or admitted by the defendant: (1) the defendant induced others to participate in the commission of the crime and occupied a position of leadership or dominance of other participants in its commission; (2) the manner in which the crime was carried out indicates planning, sophistication, or professionalism; (3) the defendant took advantage of a position of trust or confidence to commit the offense; and (4) the defendant was on probation or parole when the crime was committed. Resp. Exh. G5 at 461. The trial court stated that, in its view, any one of the four factors was sufficient to support the aggravated term. *Id.*

     However, on direct appeal the appellate court made it clear that the trial court could only rely on a factor that fell within the prior conviction exception to the *Apprendi* rule. Resp. Exh. A at 17. The first three factors did not implicate the prior conviction exception and therefore could not support the aggravated term, however, the Court of Appeal observed that California courts had broadly interpreted the prior conviction exception to include not only the fact of the prior conviction, but also other issues that could be determined by reference to court records of prior convictions, sentences, and paroles. *Id.* at 19-20. Because a defendant's probationary status was readily apparent from the court

16

1 records of prior convictions, the Court of Appeal found this factor to fit within the broad
2 construction of the exception given by California courts, and concluded that the trial court
3 properly relied on the petitioner's probationary status to justify the upper term sentence. *Id.*
4 at 20.

5       In this petition, petitioner again contends that the trial court could not impose an
6 upper term sentence based on aggravating factors that were not admitted to by him nor
7 proven to a jury beyond a reasonable doubt. The Ninth Circuit has taken a different
8 approach than California courts when addressing this question. A defendant's probationary
9 status at the time of the offense does not fall within the prior conviction exception to the
10 *Apprendi* rule. *See Butler,* 528 F.3d at 624, 647-48. However, the Ninth Circuit has
11 clarified that, although a defendant's probationary status does not fall within the prior
12 conviction exception, a state court's broader interpretation of the exception is not contrary
13 to, and does not involve an unreasonable application of, clearly established Federal law, as
14 determined by the Supreme Court of the United States. *Kessee v. Mendoza-Powers*, 574
15 F.3d 675, 677 (9th Cir. 2009). Accordingly, the state court's determination that the upper
16 term sentence was justified based on petitioner's probationary status does not contravene
17 AEDPA standards. *See id.* at 678.

18 **IV.    Appealability**

19       The federal rules governing habeas cases brought by state prisoners require a
20 district court that denies a habeas petition to grant or deny a certificate of appealability
21 ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. §
22 2254 (effective December 1, 2009).

23       To obtain a COA, petitioner must make "a substantial showing of the denial of a
24 constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the
25 constitutional claims on the merits, the showing required to satisfy § 2253(c) is
26 straightforward: The petitioner must demonstrate that reasonable jurists would find the
27 district court's assessment of the constitutional claims debatable or wrong." *See Slack v.*
28 *McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA

to indicate which issues satisfy the COA standard. Here, the court finds that two issues presented by petitioner in his petition meet the above standard and accordingly GRANTS the COA as to those issues. *See generally Miller-El*, 537 U.S. at 322. The issues are:

(1) whether the trial court's denial of petitioner's request for a continuance violated his Sixth Amendment right to counsel; and

(2) whether the trial court violated petitioner's Confrontation Clause rights by admitting, at trial, evidence of the victim's testimony from the preliminary hearing.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997)..

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A Certificate of Appealability is **GRANTED**. *See* Rule11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 19, 2013.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.09\GUESS2117.HC.wpd